# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY YARNELL WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| v.                                    ) | Case No. CIV-08-479-F |
| ) | |
| MIKE MULLIN, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, Gregory Yarnell Williams, appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. It is recommended that his petition be denied.

## I.  Relevant Case History

On September 7, 2003, police officers conducted a walk-through of an apartment complex in Oklahoma City, Oklahoma, notorious for drug and gang activity. The officers observed three individuals standing together on a balcony. The officers ascended the stairs to make contact with the individuals when one of them ran inside an apartment. Petitioner and another individual remained outside. Officer Wesley Morrison approached Petitioner and obtained permission to search him. Officer Morrison found in Petitioner's left front pocket two plastic baggies containing altogether twelve small rocks of crack cocaine. Officer Morrison also found $139 in small denomination bills in Petitioner's back pocket: four twenty-dollar bills, three ten-dollar bills, five five-dollar bills and four one-dollar bills.

Following his arrest, Petitioner was convicted, after jury trial, of Possession of a Controlled Dangerous Substance (crack cocaine) with Intent to Distribute, Case No. CF-03-5004, District Court of Oklahoma County, State of Oklahoma. Petitioner was sentenced to twenty-two years' imprisonment.

## II.   Petitioner's Claims for Federal Habeas Relief

Petitioner asserts two grounds for habeas relief. In Ground One of the Petition, Petitioner claims the police lacked probable cause to search him or, alternatively, lacked the necessary reasonable suspicion to detain him for an investigative detention. Petitioner claims, therefore, that the resulting discovery of the baggies containing crack cocaine should have been suppressed. In Ground Two of the Petition, Petitioner claims he was denied his constitutional right to an impartial jury because the State exercised its peremptory challenges to exclude jurors on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

Petitioner raised each of these claims on direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA rejected the claims on the merits and affirmed Petitioner's conviction by summary opinion filed August 8, 2007. *See* Response [Doc. #8], Exhibit 4, OCCA Summary Opinion.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the

merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that

3

principle to the facts of the prisoner's case." *Id*. at 413. **"AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'"** *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (*quoting Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id*. (*quoting Maynard*, 468 F.3d at 671)).

IV. **Analysis**

   A. **Ground One -- Petitioner's Fourth Amendment Claim**

In Ground One, Petitioner claims the police conducted an unlawful search in violation of his Fourth Amendment rights and, therefore, that evidence obtained pursuant to the search should not have been admitted at trial.

Pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), a court on federal habeas review is generally precluded from reviewing a Fourth Amendment claim where the petitioner had a full and fair opportunity to present the claim in the state court proceedings. Here, Petitioner had a full and fair opportunity to litigate his claim in state court proceedings. At the commencement of trial, the trial court held a hearing on Petitioner's motion to suppress, applied the standards set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), and denied that motion. *See* State Court Record [Doc. #11] Transcript of Trial Proceedings Had on March 29, 2005, Volume II (Tr.) at 13-21. And, Petitioner raised the Fourth Amendment claim again on direct appeal of his conviction. *See* Response, Exhibit 2, Brief of

Appellant. The OCCA reviewed the claim and denied the claim on the merits. *See* Response, Exhibit 4, OCCA Summary Opinion at 2.[1]

In his reply, Petitioner contends he was not given a fair and full opportunity to present his Fourth Amendment claim in state court because the state courts did not correctly apply United States Supreme Court precedent when denying his motion to suppress. *See* Petitioner's Objection and Response [Doc. #15] at 2-9. The Tenth Circuit has held that "a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court *willfully refuses* to apply the correct and controlling constitutional standards." *Gamble v. State of Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978) (emphasis added).[2]

Petitioner acknowledges the state district court applied *Terry* but disagrees with the court's conclusion that the evidence supported the denial of the motion to suppress.

---

[1]The Court notes the dissent of Judge Charles Johnson finding that the search of Petitioner was not lawful under either the United States or Oklahoma Constitutions. *See* OCCA Summary Opinion (C. Johnson, J., dissenting). *Stone*, nonetheless, generally precludes this Court from reviewing the merits of Petitioner's Fourth Amendment habeas claim. *Compare Brown v. Sirmons*, 515 F.3d 1072, 1082-1083 (10th Cir. 2008) (noting dissenting opinion of OCCA finding a "very serious" Fourth Amendment violation but concluding that *Stone* barred review of the claim where habeas petitioner had full and fair opportunity to litigate the claim in the state courts).

[2]Other circuits, conversely, have not adopted the rationale of *Gamble* but instead hold that an allegation that a state court erred in its determination of a Fourth Amendment issue does not suffice to avoid the *Stone* bar even if the error of law is a constitutional error. *See, e.g., Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (any argument contending a litigant did not receive a "full consideration" of a Fourth Amendment claim because the state courts provided no reasoned consideration or misapplied settled principles of constitutional law would, if accepted, render *Stone* meaningless).

Under these circumstances, the state court did not "wilfully refuse to apply the correct and controlling constitutional standards." *Compare Anderson v. Kansas*, 221 Fed. Appx. 762, 764-765 (10th Cir. March 30, 2007) (unpublished op.) (finding that state court correctly recognized governing standard from Supreme Court precedent and applied it to the facts of petitioner's case "in at least a colorable manner") *citing Cannon v. Gibson*, 259 F.3d 1253, 1264 (10th Cir. 2001) (dismissing habeas petitioner's Fourth Amendment claim because the challenge "was more akin to an attack on the merits of the [prior state court] decision rather than a charge that [it] willfully misapplied constitutional law").[3] Accordingly, federal habeas review of Petitioner's Fourth Amendment claim raised in Ground One of the Petition is barred by *Stone*.

---

[3] In Petitioner's reply [Doc. #15], Petitioner cites *Minnesota v. Dickerson*, 508 U.S. 366 (1993), to support his claim that the state court incorrectly applied Fourth Amendment standards to deny his motion to suppress. *Dickerson* -- a case relying on the standards enunciated in *Terry* -- is factually distinguishable. In *Dickerson*, the Supreme Court recognized a plain touch corollary to the already-established plain view doctrine. The Court held that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *See Dickerson*, 508 U.S. 375-376. The Court found the search at issue was unlawful because the officer discovered contraband only after squeezing, sliding and otherwise manipulating the object, thus taking the officer's actions outside the bounds of "plain touch." *Id.* at 378. However, in this case, there are no facts suggesting manipulation and the record further amply supports the state court conclusion that the search was consensual. *See* OCCA Summary Opinion at 2; *see also* Tr. Vol. II at 31-32, 47-49, 60-63 (testimony of Officer Morrison). To the extent Petitioner challenges the state court's determination, based on competent evidence, that the search was consensual, again, Petitioner seeks to attack the merits of the state court decision rather than establish the state court willfully refused to apply the correct federal constitutional standards.

### B.      Ground Two – Petitioner's Batson Claim

In Ground Two of the Petition, Petitioner claims the prosecution used peremptory challenges to exclude potential jurors on the basis of race, in violation of his Fourteenth Amendment due process rights, as determined by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986).

The record shows that eight persons on the jury panel were African-American. Tr. Vol. I at 114. The State used four of its five peremptory challenges to strike African-American jurors.  This fact is significant to the determination as to whether the State engaged in purposeful discrimination. *See United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006) (stating that "the percentage of African American veniremembers who are the subject of the prosecutor's peremptory strikes" is one of a variety of factors the court may consider "[t]o determine whether purposeful discrimination was present in the selection of a jury"). After all challenges were used, two African-American jurors remained and served on the jury. Tr. Vol. I at 113.

Defense counsel raised *Batson* objections to the States's peremptory strikes against three of the African American jurors.  As detailed below, with the exception of one objection, the trial court rejected defense counsel's *Batson* challenges.

Petitioner then raised a *Batson* claim on direct appeal of his conviction.  The OCCA concluded that Petitioner "was not denied an impartial jury comprised of a fair cross-section of the community in violation of the United States Constitution as set out in

*Batson* . . . ." *See* OCCA Summary Opinion at 2.  In reaching this conclusion, the OCCA held that "the trial court's determination that the State lacked discriminatory intent in exercising its peremptory challenges is not clearly erroneous" and deferred to the trial court's determination.  *Id*.

To determine whether a *Batson* violation has occurred in the use of peremptory strikes during jury selection, the trial court engages in a three-part analysis.  First, the opponent of a peremptory strike must make a *prima facie* showing that the strike has been exercised on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  *Johnson v. California*, 545 U.S. 162, 168 (2005) (*quoting Batson*, 476 U.S. at 93-94).  Second, if the *prima facie* showing has been made, the burden shifts to the proponent of the strike to come forward with a race-neutral reason for the strike.  *Id*.  Third, if a race-neutral explanation is tendered, the trial court must determine whether the opponent of the strike has shown purposeful discrimination.  *Id*.

Under the AEDPA, Petitioner is only entitled to relief on his *Batson* claim if the state court's determination is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Thus, a federal court can only grant [Petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.  State court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the

presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-339 (2006) (*quoting* 28 U.S.C. § 2254(e)(1)).  With these standards governing the analysis, the Court proceeds to review Petitioner's *Batson* claim raised in Ground Two of the Petition.

### 1.  Potential Juror Wigley

Petitioner's counsel made no objection to the State's exercise of its first peremptory strike against Mr. Wigley, an African American.  Tr. Vol. I at 108.  Only after the state exercised its second peremptory strike against potential juror Howell did defense counsel make any comment and then, only to state that Mr. Howell was "the second African-American that's been stricken by the State."  *Id.*  Thus, defense counsel made no specific *Batson* argument concerning Mr. Wigley and instead permitted the focus of the argument to remain on the State's strike against Mr. Howell.  Under these circumstances, Petitioner failed to establish a *prima facie* case with respect to Mr. Wigley.  *Compare Saiz v. Ortiz*, 392 F.3d 1166, 1177-1178 (10th Cir. 2004) (where counsel did not make *Batson* objection until after two women and two Hispanic jurors had been stricken by the prosecution and then the focus of the *Batson* colloquy remained solely on the two Hispanic jurors, habeas petitioner failed to establish a *prima facie* case as to the two female jurors.).[4]

---

[4]The United States Supreme Court has recognized that a *Batson* challenge may be made on the basis of gender as well as race.  *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994).

### 2. **Potential Juror Howell**

As noted above, the State exercised its second peremptory challenge to excuse Mr. Howell. The following colloquy transpired:

> MS. TRUONG: State would excuse Mr. Howell, your Honor, number two.
>
> MS. RHONE: Your Honor, we ask for a <u>Batson</u> challenge. That's the second African-American that's been stricken by the State.
>
> THE COURT: State.
>
> MS. TRUONG: Just for the record, I believe there's eight American – African-Americans on the panel, and also, that Mr. Howell's indicated that he has some personal experiences with OCPD, that – the standard procedure that they conduct in racial profiling. I just don't believe he would be a fair jury.
>
> MS. RHONE: Your Honor, it is our position that Mr. Howell, after extensive voir dire, indicated he could be fair and impartial in this case, he would be able to set aside his experience. Likewise, a concern I have is he has had problems with law enforcement. He stated he had some military ties, he works at Tinker Air Force Base, indicated while he was away his car was stolen, while he was serving in Korea, so my opinion is I think he can be fair and impartial considering the fact that he has law enforcement ties as well.
>
> THE COURT: I think Mr. Howell has expressed – she has given a race neutral reason to have him excused. I will excuse him.

Tr. Vol. I at 108-109.

Because the trial court invited the State to explain its use of the peremptory strike and the State offered explanations, the Court assumes Petitioner made a *prima facie* *Batson* showing. *Saiz*, 392 F.3d at 1178. Thus, the Court proceeds to step two of the *Batson* inquiry – whether the prosecutor offered a race-neutral reason for the peremptory

10

strike. "The second step of this process does not demand an explanation that is persuasive or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-78 (1995). Rather, the prosecutor's stated reason will be deemed race neutral unless a discriminatory intent is inherent in the prosecutor's explanation. *Saiz*, 392 F.3d at 1179 (*citing Purkett*, 514 U.S. at 768). "'A neutral explanation means an explanation based on something besides the race of the juror.'" *Saiz*, 392 F.3d at 1179 (*quoting Hidalgo v. Fagen, Inc.*, 206 F.3d 1013, 1019 (10th Cir. 2000)).

During voir dire, Mr. Howell expressed that he had some personal concerns with the police relating to perceived racial profiling. He explained that he had been apprehended by police because the police incorrectly identified his vehicle as having been involved in a shooting. His vehicle was a blue Regal and the vehicle involved in the shooting was a green Cutlass. Mr. Howell stated "[t]hey tried to say it was me at the time." Tr. Vol. I at 90-91. Mr. Howell had a pistol in his car at the time. *Id*. He was charged and convicted of carrying a concealed weapon and received a fine and a deferred sentence. Tr. Vol. I at 31-32. Mr. Howell stated that he did "not necessarily" think he had been treated fairly in this situation. Tr. Vol. I at 90.

The State offered neutral reasons for striking Mr. Howell – namely concern over Mr. Howell's negative experience with law enforcement which, in his view, involved racial profiling. Petitioner fails to demonstrate that discriminatory intent is inherent in the explanation offered by the State. *See, e.g., Green v. Travis*, 414 F.3d 288, 300 (2d Cir.

11

2005) ("[A] juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge.") (*citing United States v. Rudas*, 905 F.2d 38, 40-41 (2d Cir.1990) (upholding prosecution's peremptory challenge of Hispanic venireperson, who expressed belief that police officer had once used excessive force against him, because it gave prosecution "a basis for believing that [the venireperson] might be prejudiced against law enforcement officers and thus not be an impartial juror")); *United States v. Crawford*, 413 F.3d 873, 875 (8th Cir. 2005) (accord). *See also Boggs v. Diguglielmo*, 264 Fed. Appx. 165, 169 and n. 6 (3d Cir. 2008) (unpublished op.) (race-neutral reasons offered by prosecutor to exclude African-American venireperson included juror's concern about police bias in treatment of African-Americans).

Instead, Petitioner argues only that the State's removal of Mr. Howell was improper because Mr. Howell stated he could be fair and that his negative experience with law enforcement would not affect his ability to serve as a juror. Petitioner's contentions do not address the trial court's credibility finding at step three of the *Batson* analysis. Petitioner makes no claim that the trial court had reason to question the State's credibility. The trial court accepted the reasons offered by the State and Petitioner has failed to rebut the trial court's credibility findings by clear and convincing evidence. As the Supreme Court explained in *Rice*, even where "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility" that is not sufficient on habeas review to "supersede the trial court's credibility determination." *Id*. 546 U.S. at 341-342.

12

Instead, a habeas petitioner must demonstrate that "the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Id.* at 341. Petitioner has not met this burden and the trial court's factual determination at *Batson's* third step was not unreasonable.

### 3. Potential Juror Booker

The State attempted to exercise its third peremptory challenge to excuse Mr. Booker. Defense counsel objected noting this was the third African American stricken by the State, thus indicating a pattern of discriminatory intent. Tr. Vol. I at 110. The trial court requested that the State offer a race-neutral reason for removing Mr. Booker. The State explained that Mr. Booker expressed a bias against police officers, believing they had lied under oath and that people had been wrongly convicted as a result. *Id.* The trial court rejected the State's explanation, finding that Ms. Sims, a white juror, had also expressed distrust of police and noting that the State "ha[s] got a pattern going here." *Id.* On that basis, the trial court granted defense counsel's *Batson* objection. *Id.* The State then proceeded to use its third peremptory strike to excuse Ms. Sims. *Id.*

On the State's next peremptory challenge -- its fourth -- the State again sought to remove Mr. Booker. Defense counsel renewed her *Batson* objection. Tr. Vol. I at 111. Without repeating the reason previously offered for removing Mr. Booker, the State pointed out to the trial court that it had not stricken Ms. Lewis, another African-American

13

Case 5:08-cv-00479-F   Document 16   Filed 09/30/08   Page 14 of 20

on the jury. Tr. Vol. I at 112. The trial court allowed the strike and Mr. Booker was removed. *Id*.

Petitioner relies on the fact that the State did not repeat its race-neutral reason when defense counsel renewed her *Batson* challenge to the State's peremptory strike of Mr. Booker as grounds for establishing a *Batson* violation. The record, however, clearly demonstrates the State had offered a race-neutral reason for striking Mr. Booker and by allowing the strike, "the trial court implicitly ruled that the explanations offered by the prosecution were credible, believable, and race- and/or gender-neutral." *Saiz*, 392 F.3d at 1180. Prior to the State excusing Ms. Sims, the reason offered by the State was deemed inadequate by the trial court. Certainly, it is appropriate for a court to consider "side-by-side comparisons of some black venire panelists who were struck and white panelists who were allowed to serve" in order to determine whether "a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar non-black who is permitted to serve." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). Here, however, the similarly-situated white panelist, Ms. Sims, was not allowed to serve and once she was stricken by the State, the State's proffered reason for excusing Mr. Booker could no longer be deemed pretextual.

This result is buttressed by a review of the record which demonstrates that all three jurors who held views of skepticism directed at law enforcement were removed.

The record shows that during voir dire Mr. Booker told the State that he had received two speeding tickets, one of which he stated he deserved, the other which he did not. Tr. Vol. I at 54. When asked if he thought he had been treated fairly, Mr. Booker responded "no." *Id*. Mr. Booker elaborated that he did not challenge the traffic tickets, stating "what's the use." In response to the prosecutor's questioning, Mr. Booker confirmed that he did not have much faith in the judicial system. Tr. Vol. I at 55-56.

Later in the voir dire, Mr. Booker relayed that "[t]here are some cases where officers get up and testify falsely." Tr. Vol. I at 64. According to Mr. Booker, "[he] personally knew a man that spent 30 years [in] prison for a crime he didn't commit." Tr. Vol. I at 65.

Ms. Sims similarly expressed doubts with the legal system. Tr. Vol. I at 86. She relayed a negative experience with police involving her sixteen-year-old son. Tr. Vol. I at 86-87. She stated that her son was used by the police when the police forced him to work undercover to buy beer. Tr. Vol. I at 87. She also stated that her son had been convicted of DUI and that his case was "just a big mess with the officers." Tr. Vol. I at 88.

Mr. Wigley – removed from the jury by the State's first peremptory strike – similarly expressed his lack of confidence in the judicial system. He stated his belief that the judicial system is biased against blacks and that blacks are treated unfairly the majority of the time. Tr. Vol. I at 56. He shared an experience where he witnessed the police stop and handcuff two black men. Tr. Vol. I at 57. He stated that it seemed like

the police were trying to break the men's wrists with the handcuffs. *Id.* He stated that he saw one officer put something in the trunk of the car the men were driving. *Id.* Mr. Wigley said that he called the Oklahoma City Police Department to report what he had seen and approximately two or three minutes later, he saw the officers receive a call and then let the men go. *Id*.

Because all three jurors expressing a distrust for the legal system were removed, the trial court's credibility determination is supported by the factual record. *See Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 977 (concluding that a prosecutor's explanation for a peremptory strike of an African American female juror "could be seen as race neutral" where the same explanation also applied to "a peremptory strike on a white male juror"); *see also United States v. Nelson*, 450 F.3d at 1209 (side-by-side comparison between black and white veniremembers did not "undermine prosecutor's stated reason for striking the African American college professor, because the prosecutor also struck the other prospective juror who taught at the college level but was not African American"). Affording deference to the trial court's credibility determination, Petitioner has not met his burden of demonstrating by clear and convincing evidence that the findings are erroneous.

    **4.** **Potential Juror Miller**

As the State's exercise of its fifth and final peremptory challenge, the State moved to strike Ms. Miller. Defense counsel raised a *Batson* challenge noting that "[e]very one

but one is African-American that's been stricken by the State." Tr. Vol. I at 112. The State offered race-neutral reasons for striking Ms. Miller including the fact that Ms. Miller was "very outspoken" and that "her answers to some of the questions were just really way out there for me." Tr. Vol. I at 112, 115-116. The trial court made the following observations concerning Ms. Miller: "I believe Ms. Miller's answers were even more far aside than any other African-American's. Any of them. Her answers to some of the questions and her body language and her gestures during questioning of other jurors as well." Tr. Vol. I at 115. The trial court then allowed the State to exercise its peremptory challenge against Ms. Miller. Tr. Vol. I at 116.

Petitioner argues that Ms. Miller expressed during voir dire that she was willing to follow the law and to listen to the evidence. Accepting Petitioner's argument as true, this does not establish clear and convincing evidence of discriminatory intent by the State or that the trial court's credibility determinations were erroneous. The observations about Ms. Miller's demeanor by both the State and the trial court are supported by statements Ms. Miller made during voir dire.[5] Again, Petitioner has failed to establish that the State's stated reasons for exercising a peremptory strike inherently demonstrate discriminatory intent. Rather, the State's explanation was race-neutral, that is, based on

---

[5] For example, Ms. Miller's responses to questions posed to the jury panel about their ability to listen to the evidence and follow the law indicate confusion about her role as a juror and her ability to evaluate the credibility of witnesses. Tr. Vol. I at 65-67, 71-72, 73-74. And, at one point Ms. Miller, responding to a hypothetical scenario, stated: "What did you say to me just now about the cake? I was traveling somewhere else." Tr. Vol. I at 95. The record supports the trial court's findings regarding Ms. Miller's demeanor.

something besides the race of Ms. Miller. The fact that "race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention) . . . [make] the trial court's first-hand observations of even greater importance." *Snyder v. Louisiana*, ___ U.S. ___, 128 S.Ct. 1203, 1208 (2008). In the absence of exceptional circumstances, reviewing courts must defer to these credibility determinations by the trial court. *Id*.

### 5. Other Alleged Evidence of Discriminatory Intent

Petitioner further claims the State's discriminatory intent is evidenced by the fact that three white jurors, each with a criminal background, were not questioned by the State about the charges brought against them, their attitudes toward law enforcement or whether the charges would impact their ability to be fair. Mr. Wichert had been charged with assault and battery but explained the charges were dropped. Tr. Vol. I at 19. Mr. Smiley had been arrested for trespassing. Tr. Vol. I at 24. Mr. Hart had been arrested for burglary. Tr. Vol. I at 48-49. The jurors provided this information in response to questions asked by the trial court, not by either the State or defense counsel. Jurors Wichert and Smiley stated that they did not harbor any bad feelings towards the State or the defendant as a result of the criminal charges brought against them. Tr. Vol. I at 19, 24. Juror Hart stated that he had been treated fairly by the State in relation to the charges brought against him and had accepted responsibility for them. Tr. Vol. I at 48-49. Contrary to Petitioner's claim, therefore, no disparity in questioning existed.

Significantly, the record shows the identical questions were posed by the trial court to the African American jurors.  When Ms. Lewis, an African American juror, advised the trial court that she had been charged for public drunk and that her case was currently pending in the same district court, she too was asked by the judge whether she harbored any bad feelings toward the State or the defendant as a result of the charges.  Tr. Vol. I at 40-41.  Similar to its approach to the three white jurors, the State did not follow up with further questions of Ms. Lewis.  Thus, Petitioner has failed to establish the State engaged in voir dire tactics aimed to unfairly eliminate African American jurors.

In sum, the state court's factual findings, which for purposes of habeas review are deemed presumptively correct, have not been rebutted by Petitioner by clear and convincing evidence. Moreover, the OCCA's determination of Petitioner's *Batson* challenge is not contrary to or an unreasonable application of clearly established federal law, nor is it an unreasonable determination of the facts in this case.  Ground Two of the Petition, therefore, should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by

October ___20th___, 2008.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this ___30th___ day of September, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE